THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| E.K. and A.O., IN THEIR CAPACITY AS PARENTS AND GUARDIANS OF MINOR STUDENTS D.O. AND J.O., <br><br> Plaintiffs, <br><br> v. <br><br> NOOKSACK VALLEY SCHOOL DISTRICT, <br><br> Defendant. | CASE NO. C20-1594-JCC <br><br> ORDER |

This matter comes before the Court on Defendant Nooksack Valley School District's motion to dismiss (Dkt. No. 20). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.   BACKGROUND

E.K. and A.O. are parents of two sons, D.O. and J.O., who attend Sumas Elementary School in the Nooksack Valley School District. (Dkt. No. 14 at 5, 8.) Both children are hearing impaired, autistic, and require sign language to communicate.[1] (*Id.* at 2, 4–5.) Plaintiffs allege

---

[1] Although Plaintiffs make these allegations unequivocally in part of the complaint, elsewhere they are less absolute, noting that D.O. is "suspected" of being autistic, (*id.* at 4), and that the District could have accommodated his hearing loss by "providing an FM system in his classroom," (*id.* at 8), rather than sign language. They also note that "[t]he full extent of J.O.'s

1   that although the District "knew or should have known" of D.O. and J.O.'s hearing impairments,
2   the District "placed both boys in a self-contained classroom with no effective access to sign
3   language or sign language instruction." (*Id.* at 7.) By "no effective access," Plaintiffs appear to
4   mean no access for J.O. and limited access for D.O. through "an instructional assistant in his
5   classroom that knew a little bit of sign language." (*Id.* at 7–8.) As a result, "both boys experience
6   permanent cognitive deficits." (*Id.* at 8.)

After J.O. began throwing objects and wandering away, the District required him to wear a "gait belt" or a "sensory belt," which allowed staff members to "walk him from one place to another." (*Id.* at 8–9.) Eventually, the District began strapping J.O. to a chair "for hours daily" by attaching a heavy strap to his belt. (*Id.* at 9.) The District also restrained D.O. and J.O. in "Rifton chairs" to prevent them from wandering away. (*Id.* at 10.) "[B]oth boys [have] exhibit[ed] symptoms of post-traumatic stress disorder related to J.O.'s frequent restraint at school." (*Id.*) In addition, D.O. has shown signs of anxiety and often cannot focus at school until he checks on J.O. and is assured that J.O. is not being harmed. (*Id.*)

Plaintiffs appear to assert at least thirteen causes of action in the First Amended Complaint. (*See* Dkt. No. 14 at 11–26.) The District moved to dismiss seven of them, and in response, Plaintiffs have agreed to withdraw four. (*See* Dkt. Nos. 20, 21 at 3.) That leaves three claims the District argues should be dismissed because Plaintiffs fail to meet federal pleading standards: negligence; negligent hiring, retention, training, and supervision; and WLAD.

## II.    DISCUSSION

### A.    Shotgun Pleading

Before analyzing the substantive elements of each cause of action, the Court addresses the District's argument that Plaintiffs engaged in impermissible shotgun pleading. The term

---

hearing loss is undetermined because he has not undergone a hearing test that could produce a valid result." (*Id.* at 5.) The Court treats Plaintiffs' more absolute allegations as true at this stage of the litigation because it must construe the allegations in the light most favorable to Plaintiffs. *See Isabel v. Reagan*, 987 F.3d 1220, 1226 (9th Cir. 2021).

"shotgun pleading" appears to have originated in a footnote in a dissenting opinion in the Eleventh Circuit in 1985. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (explaining origin). It has come to refer to a collection of pleading practices that the Eleventh Circuit has held violate either Rule 8(a)(2)'s requirement that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief" or Rule 10(b)'s requirement that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count" if "doing so would promote clarity." *See id.* at 1320–23. The most relevant form of shotgun pleading for present purposes is when "a complaint contain[s] multiple counts [and] each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. That is the method Plaintiffs use here. (*See* Dkt. No. 14 at 11–12, 15, 18, 23–26.) This kind of complaint "mak[es] it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018). The Eleventh Circuit has categorically barred these complaints and has instructed district courts to strike them *sua sponte* and then dismiss them with prejudice if a plaintiff fails to cure the deficiencies after being given an opportunity to amend. *See id.* at 1356–59; *see also Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001) (holding that district court "*must* intervene *sua sponte* and order a repleader" even if "the defendant does not move the district court to require a more definite statement") (emphasis added).

The Ninth Circuit has affirmed the dismissal with prejudice of at least one "shotgun pleading" under Rule 8(a), *see Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011), but has not mandated the more aggressive approach required in the Eleventh Circuit. Even so, Rules 8 and 10 still apply, and district courts within the Ninth Circuit routinely dismiss complaints that leave the Court and the defendant guessing what facts support the plaintiff's claims. *See, e.g., Nissen v. Lindquist*, 2017 WL 26843, slip op. at 1–2 (W.D. Wash. 2017) (dismissing claims that

did not "give Defendants, and the Court, adequate notice of the allegations supporting each federal cause of action"); *Adams v. BRG Sports, Inc.*, 2017 WL 5598647, slip op. at 2–4 (N.D. Cal. 2017) (complaint filed by 34 football players was deficient because, among other reasons, "each individual player's claims [arose] out of a distinct set of facts" and the complaint did not set out the claims in separate counts); *Hughey v. Camacho*, 2014 WL 5473184, slip op. at 3–4 (E.D. Cal. 2014) (dismissing complaint that, among other things, incorporated by reference several paragraphs of factual allegations "without designating which facts underlie each claim").

A complaint must "set[] forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996). "To comply with Rule 8 each plaintiff must plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of a prima facie case . . . ." *Bautista v. L.A. Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000). In addition, Rule 10(b) requires a plaintiff to set forth "each claim founded on a separate transaction or occurrence . . . in a separate count" if "doing so would promote clarity."

Plaintiffs' substantive allegations are organized into two sections: a "factual allegations" section and a "causes of action" section. (*See* Dkt. No. 14 at 7, 11.) The factual allegations section sets out the primary focus of Plaintiffs' complaint: the District allegedly denying D.O. and J.O. sign language services and strapping them to chairs. (*See id.* at 7–11.) The causes of action section then lists at least thirteen causes of action, some of which satisfy Rules 8 and 10 and some of which do not. (*See id.* at 11–26.) For example, Plaintiffs make clear that their 42 U.S.C. § 1983 claim is based on the District strapping J.O. and D.O. to Rifton chairs, while their now-withdrawn First Amendment claim was based on the District denying them access to sign language. (*See id.* at 18, 21.) But Plaintiffs' negligence and WLAD claims do not "identify[] the transaction or occurrence giving rise to the claim[s]."[2] *Bautista*, 216 F.3d at 840. Instead, the

---

[2] Plaintiffs' negligent hiring, retention, training, and supervision "claim" (really four independent claims) is even more deficient in this regard because it does not incorporate by reference *any* allegations to support it. (*See* Dkt. No. 14 at 24–25.) At the same time, it is obvious what facts

negligence and WLAD claims incorporate by reference every preceding paragraph in the complaint and then simply recite the elements of the causes of action. (*See* Dkt. No. 14 at 23–24.) Plaintiffs never explain whether these claims are based on the District's failure to provide sign language services, the District strapping D.O. and J.O. to Rifton chairs, both, or other allegations in the complaint. *Cf. SEC v. Otto*, 2010 WL 11682498, slip op. at 5 (W.D. Wash. 2010) ("The Complaint does not connect the factual allegations to the claims made, and thus does not allow Mr. Otto to prepare an adequate defense."). To the extent Plaintiffs intend to base these claims on both the failure to provide sign language services and the frequent use of Rifton chairs, these portions of the complaint violate Rule 10(b).

At bottom, "[w]hile incorporation by reference is a useful tool to streamline pleadings, it is not intended to create guesswork as to which facts support which claims." *Bristol SL Holdings, Inc. v. Cigna Health Life Ins.*, 2020 WL 2027955, slip op. at 2–3 (C.D. Cal. 2020). Without any connection between the facts pled and these causes of action, that is what Plaintiffs' complaint does here. This deficiency alone is a sufficient basis to dismiss these claims, but in the interest of efficiency, the Court will also analyze the District's substantive challenges to the complaint. *See id.* at 3.

    **B.**    ***Iqbal* and *Twombly***

        1.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

---

this claim is based on, so the Court concludes that it satisfies Rule 8, even though Plaintiffs do not formally incorporate those allegations by reference.

not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### 2. Negligence

To state a negligence claim, Plaintiffs must allege that the District owed them (or D.O. and J.O.) a duty and allege facts showing that the District breached that duty and that the District's breach injured them. *See Degel v. Majestic Mobile Manor, Inc.*, 914 P.2d 728, 731 (Wash. 1996). Plaintiffs allege that the District "breached [its] duty to exercise reasonable care to educate, socialize, assist, protect and serve D.O. and J.O." and, as a result, "D.O. and J.O. suffered and will likely continue to suffer injuries and losses as well as general and special damages."[3] (Dkt. No. 14 at 24.) But these allegations are simply "a formulaic recitation of the elements of a cause of action" that do not satisfy federal pleading standards. *Twombly*, 550 U.S. at 555. Plaintiffs must allege *facts* that, accepted as true, show that they are entitled to relief. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Plaintiffs fail to do so here because they do not allege *how* the District allegedly breached these various duties or what injuries D.O. and J.O. suffered.

Plaintiffs argue that they are not required to plead "all the details of the specific actions and inactions that resulted in harm to their children," (Dkt. No. 21 at 7), which is plainly true, but Plaintiffs must allege *some* details that are sufficient to state a plausible claim for relief. *See, e.g., Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (holding that plaintiff's complaint alleging that Tesla "failed to provide accessible service counters" in violation of the ADA failed to state a claim because the complaint did not explain *how* the counters were inaccessible); *see also Seattle Sperm Bank, LLC v. Cryobank Am., LLC*, 2018 WL 3769803, slip op. at 6 (W.D. Wash. 2018) (dismissing unfair competition claim when plaintiff incorporated by

---

[3] Plaintiffs also allege that the District "breached the standard of care" by "hiring, retraining, failing to supervise, or failing to train Defendant Roseann Furman." (Dkt. No. 14 at 24.) Because the complaint includes a separate cause of action for "Negligent Hiring, Training and Supervision" the Court will consider this allegation with that cause of action.

ORDER
C20-1594-JCC
PAGE - 6

1  reference "all of its prior allegations . . . but [did] not sufficiently allege how Defendants
2  engaged in . . . unfair competition"). Therefore, the Court DISMISSES Plaintiffs' negligence
3  claim.

### 3.  Negligent Hiring, Training, Retention, and Supervision

Plaintiffs' next count contains four distinct causes of action: negligent hiring, negligent retention, negligent training, and negligent supervision.[4] The Washington Supreme Court analyzes negligent hiring and retention together and negligent training and supervision together, so the Court will do so here. *See Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 206–11 (Wash. 2018).

#### a.  Negligent Hiring and Retention

To state a claim for negligent hiring or retention, a plaintiff must allege that an employer hired or retained an incompetent or unfit employee and that the employer knew "of the employee's unfitness or failed to exercise reasonable care to discover the unfitness before hiring or retaining the employee." *Id.* at 206. "The difference between negligent hiring and negligent retention is timing. Negligent hiring occurs at the time of hiring, while negligent retention occurs during the course of employment." *Id.* (internal citation omitted).

Plaintiffs allege that the District negligently hired Roseann Furman, D.O. and J.O.'s special education teacher, because the District knew that "she did not have appropriate training in the area of deaf education" when it hired her, (Dkt. No. 14 at 6, 10), and because the District retained her after an occupational therapist informed the District that Ms. Furman was improperly restraining J.O. "for hours daily" in violation of Washington law, (*see id.* at 9–10). These allegations are sufficient to state claims for negligent hiring and retention.

The District concedes that the negligent retention allegations suffice, but argues that the

---

[4] Although this section of the complaint is titled "Negligent Hiring, Training and Supervision," Plaintiffs' allegations within this section make clear that Plaintiffs also assert a negligent retention claim. (*See* Dkt. No. 14 at 24–25.)

negligent hiring allegations are deficient because Plaintiffs "do not allege that training [in deaf education] was necessary for the job when [Ms. Furman] was hired and do not provide the date she was hired." (Dkt. No. 20 at 11.) But Plaintiffs are not required to pinpoint the date Ms. Furman was hired to state a claim for negligent hiring and Plaintiffs *do* allege that training in deaf education was necessary for the job when they allege that Ms. Furman lacked "appropriate training in . . . deaf education." (Dkt. No. 14 at 10).

> b. *Negligent Training and Supervision*

Under Washington law, "an action based on negligent training and supervision 'is applicable *only* when the [employee] is acting outside the scope of [her] employment.'" *Anderson*, 423 P.3d at 208 (quoting Restatement (Second) of Torts § 317 cmt. a). If the employee "was fulfilling his or her job functions at the time he or she engaged in the injurious conduct," *Robel v. Roundup Corp.*, 59 P.3d 611, 621 (Wash. 2002), the employer cannot be liable for negligent training or supervision, *Anderson*, 423 P.3d at 208. Instead, the employer may be "vicariously liable under the principles of the law of Agency." *Id.* (quoting Restatement (Second) of Torts § 317 cmt. a). Plaintiffs do not allege that Ms. Furman was acting outside the scope of her employment. Therefore, the Court DISMISSES Plaintiffs' negligent training and supervision claims.

> 4. WLAD

The Court understands Plaintiffs' WLAD claim to be based on the District's alleged failure to reasonably accommodate D.O. and J.O.'s hearing impairments.[5] (*See* Dkt. No. 14 at 8.) To state a prima facie claim of public accommodation discrimination under WLAD, Plaintiffs must allege: (1) that D.O. and J.O. have disabilities, (2) that Sumas Elementary School is a place of public accommodation, (3) that the District discriminated against D.O. and J.O. by providing

---

[5] As discussed earlier, because Plaintiffs do not identify the facts upon which this claim is based, this is the Court's best interpretation. If Plaintiffs intended to assert a WLAD claim based on a different transaction or occurrence, they may amend their complaint to make that clear.

them with a level of services that is not comparable to the level of services the District provides to individuals without disabilities, and (4) that D.O. and J.O.'s disabilities were a substantial factor causing the District to provide a different level of services. *Fell v. Spokane Transit Auth.*, 911 P.2d 1319, 1328 (Wash. 1996).

The District moves to dismiss this claim because, it argues, Plaintiffs failed to plead facts that satisfy the third and fourth elements. The Court disagrees. The most fundamental service an elementary school provides is educational instruction. Plaintiffs allege that D.O. and J.O. require sign language to communicate and the District did not provide them with sign language services that were necessary for them to understand their teachers. Therefore, Plaintiffs allege that the District denied D.O. and J.O. a comparable level of educational instruction (*i.e.*, teaching they could understand) that the District provides to students who are not hearing impaired. While the District is correct that Plaintiffs did not *expressly* plead that the District generally teaches non-disabled students in a language they can understand, the Court must "draw on its judicial experience and common sense" when "[d]etermining whether a complaint states a plausible claim for relief." *Iqbal*, 556 U.S. at 679. The better practice would have been to plead this element expressly, but the Court can reasonably infer based on judicial experience and common sense that the District generally teaches students who are not hearing impaired in a language they can understand.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the District's motion to dismiss (Dkt. No. 20). In summary, Plaintiffs' negligence and WLAD claims are DISMISSED because Plaintiffs do not identify the facts on which they are based or combine claims based on separate transactions or occurrences into single counts. Plaintiffs' negligent training and supervision claims are DISMISSED because Plaintiffs do not allege that Ms. Furman was acting outside the scope of her employment. Plaintiffs may file an amended

complaint addressing the deficiencies above within 21 days of the date of this order.[6] If Plaintiffs choose to amend the complaint, they must identify the facts on which each claim is based and separate each "claim founded on a separate transaction or occurrence . . . in[to] a separate count." Fed. R. Civ. P. 10(b). For example, Plaintiffs must make clear whether their negligence claim is based on the District's failure to provide sign language services, the District strapping D.O. and J.O. to the Rifton chairs, or both. If both, Plaintiffs must separate the claim based on the failure to provide sign language services and the claim based on the Rifton chairs into separate counts. In addition, the amended complaint must be a "clean" document and may not contain extensive underlined and stricken text. If Plaintiffs wish to provide a redlined version of the complaint to show what has been changed, Plaintiffs may do so in a separate document.

DATED this 19th day of April 2021.

*(signature)*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[6] The Court rejects the District's almost frivolous argument that Plaintiffs should be denied leave to amend because the District's counsel pointed out some of these deficiencies in the past and Plaintiffs did not cure them. (*See* Dkt. No. 20 at 13.) The District does not cite any case holding that a plaintiff is obligated to amend its complaint in response to a defendant's claim that the complaint is deficient, and the Court is not aware of any. If the rule were otherwise, a defendant could seek dismissal without leave to amend in virtually every case simply by sending the plaintiff an advance copy of the motion to dismiss.

ORDER
C20-1594-JCC
PAGE - 10